UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Troy K. Scheffler,

            Plaintiff,

v.

City of New Hope, et al.,

            Defendants.

Court File No. 18-cv-1690 (SRN/LIB)

**REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge upon the Judicial Defendants' Motion to Dismiss, [Docket No. 44]; the City of New Hope's Motion to Dismiss, [Docket No. 50]; and upon referral from the Honorable Susan Richard Nelson. (Order of Reference [Docket No. 59]). A hearing was held on December 17, 2018, after which the Defendants' Motions were taken under advisement. (Minute Entry [Docket No. 88]).

For the reasons discussed herein, it is recommended that the Judicial Defendants' Motion to Dismiss, [Docket No. 44], be **GRANTED**; that the City of New Hope's Motion to Dismiss, [Docket No. 50], be **DENIED as moot**; and that the present action be **DISMISSED with prejudice**.

**I.     Background**

Plaintiff Troy Scheffler initiated the present case on June 19, 2018, by filing his Complaint. [Docket No. 1]. On August 30, 2018, Plaintiff filed the now operative Amended Complaint. [Docket No. 41]. Plaintiff's Amended Complaint, [Docket No. 41], names as Defendants Richard A. Trachy, Lucinda E. Jesson, Ivy S. Bernhardson, Francis J. Connolly, James B. Florey (hereinafter collectively the "Judicial Defendants") and the City of New Hope.

Defendant Trachy is a Minnesota State Judicial Referee. Defendants Connolly, Jesson, and Florey are Justices on the Minnesota Court of Appeals. And Defendant Bernhardson is the Chief Judge of the Minnesota State District Court for the Fourth Judicial District.

In his Amended Complaint, Plaintiff alleges as follows. On October 12, 2010, Plaintiff was charged with speeding by the City of New Hope police department. (Id. at 4). Thereafter, on April 7, 2011, Plaintiff reached an agreement with the City of New Hope, through prosecuting attorney Steven Sondrall, to "dismiss" the speeding charge. (Id. at 5). The agreement provided that the speeding charge would be "dismissed" if Plaintiff paid $145.00 in prosecution costs and did not receive any new traffic violations in the next year. (Id.). It further provided "that if the agreement is terminated and the prosecution resumes and a trial is held that Plaintiff would then stipulate that on October 12, 2010 in the City of New Hope [Plaintiff] was travelling northbound on Highway 169 at a pees [sic] of 67 mph. The speed limit on Highway 169 is 55 mph." (Id. at 5–6).

The state court accepted the agreement on April 14, 2011. (Id. at 6). And on October 9, 2012, the state court dismissed the speeding charge.

On March 8, 2016, Plaintiff filed a Petition for Expungement pursuant to Rule 609A.02. Plaintiff was then provided a "Notice of No hearing" by the Hennepin County Court Administrator. The notice provided that a hearing would only be held if the court was considering denying the petition. (Id. at 7).

On July 6, 2016, Defendant Trachy denied Plaintiff's Petition without a hearing. (Id. at 8). Defendant Trachy's decision was co-signed by Defendant Bernhardson. Plaintiff alleges that Defendant Trachy omitted from his decision material portions of the expungement statute there

at issue, and Plaintiff further alleges that Defendant Trachy also crafted arguments on behalf of the City of New Hope. (Id. at 8–12).

Plaintiff alleges that Defendant the City of New Hope did not object to the denial. (Id. at 12). Plaintiff alleges, however, that Defendant City of New Hope had a contractual and ethical obligation to object to the denial of expungement because Plaintiff was being denied the benefit of the bargain of their agreement. (Id.).

On July 21, 2016, Plaintiff filed an appeal of the denial of his Petition. (Id. at 13). Plaintiff alleges that on December 28, 2016, the Minnesota Court of Appeals "reversed and remanded" the decision "based on the fact that Defendant Trachy and Defendant Bernhardson denied Scheffler his right to a hearing." (Id.).

On March 16, 2017, Plaintiff appeared before Defendant Trachy concerning the remanded Petition. (Id. at 13–16). On April 7, 2017, Defendant Trachy again denied Plaintiff's Petition, and that denial order was co-signed by Defendant Bernhardson. (Id.). Plaintiff alleges that the denial order again misstated the statute at issue, and it advocated for the City of New Hope who did not appear to contest the Petition. Plaintiff further alleges that in the order Defendants Trachy and Bernhardson "made a finding of guilt by stating, 'It is important to note that in this present case, there is no question at all of Petitioner's factual guilt." (Id.) (underlining in original).

On June 12, 2017, Plaintiff appealed the denial of his Petition. (Id. at 16). Defendants Florey, Connolly, and Jenson denied Plaintiff's request for oral argument, and they affirmed the denial of Plaintiff's Petition. (Id. at 16–18).

On December 28, 2017, Plaintiff filed a petition for discretionary review to the Minnesota Supreme Court. (Id.). And on February 20, 2018, that petition for review was denied. (Id. at 18–20).

On March 23, 2018, Plaintiff filed a second petition for expungement (hereinafter the "Second Petition"). (Id. at 20). On May 24, 2018, Plaintiff was provided with a "notice of no hearing" which indicated that a hearing would only be held if the court intend to deny the Second Petition. (Id. at 20–21). On June 4, 2018, Defendant Trachy and Bernhardson issued an order indicating that they intended to deny the Second Petition. (Id. at 21).

Plaintiff filed a motion to disqualify Defendant Trachy due to alleged bias. (Id.). On April 11, 2018, Defendant Trachy issued an order denying the request to disqualify. (Id. at 22).

Plaintiff also sought to schedule a hearing for a Rule 60.02 motion, however, he alleges the "Hennepin County Court Administrator" refused to schedule a hearing on Plaintiff's Rule 60.02 motion.[1] Plaintiff further alleges that the Hennepin County Court Administrator supervisor told Plaintiff that Defendant Bernhardson had said that Plaintiff was required to wait on the Rule 60.02 motion. (Id.).

On April 18, 2018, Plaintiff filed a motion to have Defendant Bernhardson reconsider Defendant Trachy's decision declining to disqualify himself. (Id. at 23). Defendant Bernhardson assigned the matter to Judge Meyer. On May 17, 2018, a hearing was held on Plaintiff motion to reconsider. Judge Meyer denied Plaintiff's motion to reconsider.

On June 19, 2018, Plaintiff filed the present case. (Compl. [Docket No. 1]).

---

[1] Rule 60.02 of the Minnesota Rules of Civil Procedure allows a party to bring a motion to correct, among other things, a "[m]istake, inadvertence, surprise, or excusable neglect" previously made by the court. It appears Plaintiff was attempting to bring a Rule 60.02 motion to "correct" the alleged finding of guilt in Defendant Trachy's order denying Plaintiff's original Petition.

4

On July 9, 2018, Defendant Trachy and Defendant Bernhardson denied Plaintiff's Rule 60.02 motion without a hearing. (Id. at 23–25). In that same order, Defendant Trachy recused himself from further proceedings. (Id.). Plaintiff alleges that in this order Defendants referred to the present case as frivolous. (Id. at 25).

On July 20, 2018, Plaintiff appealed the denial of his Rule 60.02 motion which sought to "correct" the alleged finding of guilt in Defendant Trachy's order denying Plaintiff's original Petition. On July 26, 2018, the Minnesota Court of Appeals dismissed Plaintiff's appeal without a hearing. (Id. at 26).

On July 28, 2018, Plaintiff attended a hearing in front of Hennepin County Judge Nelson L. Peralta[2] concerning Plaintiff's Second Petition. (Id. at 26). Judge Peralta, however, continued the hearing, and he order Plaintiff to serve the Second Petition upon certain parties not identified in Plaintiff's Amended Complaint.

On the basis of the above allegations, Plaintiff alleges seventeen (17) causes of action. (Id. at 27–49). Pursuant to the Minnesota Constitution Plaintiff alleges claims for Denial of Equal Protection (Count 1), Denial of Right to Confront Hostile Witness in Criminal Proceeding (Count 2), Denial of Procedural Due Process Right as Applied to Plaintiff to Notice and Meaningful Hearing opportunity and Double Jeopardy (Count 3), and Denial of Right to Due Process (Count 4). Pursuant to the United States Constitution Plaintiff alleges claims for Denial of Right to Access to Court to Petition for Redress of Grievances (Count 5), Denial of Due Process as Applied to Plaintiff (Count 6), Denial of Right to Confront Hostile Witness in Criminal Proceeding (Count 7), Denial of Procedural Due Process as Applied to Plaintiff to Have Meaningful Hearing on Expungement and Motion to Amend an Order under MRCP 60.02 (Count 8), Denial of Equal Protection of Laws (Count 9), and Denial of Right to Due Process

---

[2] Judge Peralta is not a Defendant in the present case.

(Count 17). Counts 1 through 9 and Count 17 are not directed at any specific Defendant, however, they appear to refer only the Judicial Defendants. (Id. at 27–49).

Plaintiff also alleges claims of Breach of Contract (Count 10), Tortious Interference with a Contract (Count 11), Promissory Estoppel (Count 12), Fraud in the Inducement (Count 13), Negligent Misrepresentation (Count 14), Unjust Enrichment (Count 15), and Negligence (Count 16). Counts 10 through 6 are asserted against only Defendant City of New Hope.

As relief, Plaintiff seeks monetary damages; declaratory relief; "[i]njunctive relief to enjoin (a) denial of Rule 60.02 and partiality hearings, and (b) to enjoin any uniform rule, or rule as applied to Plaintiff," prohibiting him from presenting oral argument; and other unspecified mandamus relief. (Id. at 49–50). Plaintiff does not specify from which Defendant he seeks each form of relief. (See, Id.).

On September 6, 2018, the Judicial Defendants filed their present Motion to Dismiss. [Docket No. 44]. On September 11, 2018, Defendant City of New Hope filed its Motion to Dismiss. [Docket No. 50]. And on September 12, 2018, the Honorable Susan Richard Nelson referred the present Motions to the undersigned for report and recommendation. (Order [Docket No. 59]).

On February 6, 2019, Plaintiff and Defendant the City of New Hope submitted a "Stipulation of Dismissal of Defendant City of New Hope With Prejudice." [Docket No. 90]. Pursuant to that Stipulation, on February 6, 2019. Judge Nelson ordered that the present "action against the City of New Hope is **DISMISSED WITH PREJUDICE**." (Order [Docket No. 92]).[3]

On February 13, 2019, the undersigned's chambers received an unsolicited email from Plaintiff in which Plaintiff proffers his belief that the issues in the present case regarding

---

[3] Because Defendant the City of New Hope has been dismissed from the present action Defendant City of New Hope's Motion to Dismiss, [Docket No. 50], is now moot. Accordingly, the undersigned recommends that Defendant City of New Hope's Motion to Dismiss, [Docket No. 50], **be denied as moot**.

Defendant the City of New Hope are moot. The email further provides that on January 2, 2019, Plaintiff's Second Petition for expungement was granted in state court. Plaintiff also asserts that "much of the obviously relevant mandamus and declaratory relief demanded is also moot due to the expungement being granted." Although Plaintiff appears to initially assert that all claims in the present action are moot, Plaintiff also asserts in his letter that "the expungement doesn't moot the defendants finding that Plaintiff was guilty of a dismissed charge."[4] Plaintiff's email also appears to have been sent to the Judicial Defendants' counsel of record.

## II.     Judicial Defendants' Motion to Dismiss. [Docket No. 44].

The Judicial Defendants' Motion to Dismiss, [Docket No. 44], seeks an Order of this Court dismissing all claims raised against them by Plaintiff. The Judicial Defendants argue that Plaintiff's claims against them are wholly barred by the doctrine of judicial immunity.

For his part, Plaintiff asserts that the Judicial Defendants are not entitled to judicial immunity because the Judicial Defendants were acting outside the scope of their judicial authority when they issued their opinions involving Plaintiff's original Petition for expungement. Plaintiff asserts the Judicial Defendants acted outside the scope of their judicial authority when they issued an order which allegedly found Plaintiff guilty of a crime without a hearing, as well as, when the Judicial Defendants allegedly crafted arguments on behalf of the City of New Hope when the Judicial Defendants allegedly "rewrote" the expungement statute at issue.

It is a "well-settled" tenant of the law "that judges of general jurisdiction are not liable in civil actions based on claims of their misconduct during the performance of their judicial functions." Stump v. Sparkman, 435 U.S. 349, 355–56 (1978). This resulting judicial immunity

---

[4] Although it could reasonably be assumed from Plaintiff's letter that many of the claims he raises against the Judicial Defendants are now moot, that is not entirely clear from his letter. Therefore, the Court continues under the presumption that all claims raised against the Judicial Defendants remain at issue because that was the case as presented to this Court, and the Court has not been given any clear, affirmative notice that Plaintiff has withdrawn any of his claims against the Judicial Defendants.

7

is immunity from suit, not just from the ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991). There are only two circumstances in which judicial immunity is not afforded to a judicial defendant: (1) if the judge is being sued for actions that were not taken in the judge's judicial capacity, or (2) if the judge is being sued for actions taken "in the complete absence of jurisdiction." Id. at 11–12; see, Grazzini-Rucki v. Knutson, No. 13-cv-2477 (SRN/JSM), 2014 WL 2462855, *17 (D. Minn. May 29, 2014).

This absolute judicial immunity extends to judicial referees as well. Jackson v. Marek, No. 18-cv-1432 (JRT/KMM), 2018 WL 3321577, at *2 (D. Minn. June 18, 2018) (quoting Cassell v. County of Ramsey, No. 15-cv-2598 (PJS/JJK, 2015 WL 9590802, at *4 (D. Minn. Dec. 11, 2015)), report and recommendation adopted, 2018 WL 3321439 (D. Minn. July 5, 2018). "The desirability of such freedom of judicial action applies equally to court-appointed referees and receivers, and brings them within the cloak of judicial immunity." Id.

In the present case, the record before the Court makes evident that when the Judicial Defendants took all of the actions of which Plaintiff presently complains, the Judicial Defendants were acting squarely within their judicial capacities and within their jurisdiction. Accordingly, the Judicial Defendants are each entitled to absolute immunity from suit including every claim Plaintiff attempts to raise against them in the present case.

Liberally construing Plaintiff's pleadings in his favor,[5] Plaintiff asserts that the Judicial Defendants acted outside their judicial roles when the Judicial Defendants allegedly issued an order which allegedly found Plaintiff guilty of a crime without a hearing, as well as, when the Judicial Defendants allegedly crafted arguments on behalf of the City of New Hope by allegedly

---

[5] "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

8

"rewriting" the expungement statute at issue. Plaintiff's argument, however, appears to misinterpret the concept of judicial capacity as it relates to the doctrine of judicial immunity.

"An act is judicial if it is a function normally performed by a judge and the parties dealt with the judge in his [or her] judicial capacity." In the present case, Plaintiff "dealt" with the Judicial Defendants exclusively in their "judicial capacity." Plaintiff's Amended Complaint is devoid of any allegations that he dealt with the Judicial Defendants outside of the judicial setting related to any possible hearing or oral argument, and therefore, each of the actions taken by the Judicial Defendants in the present case was a circumstance in which Plaintiff "dealt" with the Judicial Defendants in his or her judicial capacity. See, gen., Grazzini-Rucki, 2014 WL 2462855, *17. Moreover, the issuance of orders and opinions is precisely the type of action normally performed by a judge or judicial officer. Accordingly, the Court finds that all of the actions at issue in the present case taken by the Judicial Defendants were "judicial" as required for application of the doctrine of judicial immunity.

Plaintiff also asserts that the Judicial Defendants acted outside their jurisdiction when the Judicial Defendants allegedly issued an order finding Plaintiff guilty of a crime without a hearing, as well as, when the Judicial Defendants allegedly crafted arguments on behalf of the City of New Hope by allegedly "rewriting" the expungement statute at issue. Plaintiff's argument, however, appears to misinterpret the concept of judicial jurisdiction as it related to the doctrine of judicial immunity.

The record now before the Court, indicates that all of the actions taken by the Judicial Defendants which are at issue in the present case were within the Judicial Defendants' jurisdiction as defined by the doctrine of judicial immunity. Even assuming solely for the sake of argument that each of the allegations of Plaintiff to be true, and the Judicial Defendants issued an

order implying Plaintiff was "factually guilty," as well as, omitted portions of an expungement statute, the action taken by the Judicial Defendants which are at issue in the present case were within the Judicial Defendants' jurisdiction as defined by the doctrine of judicial immunity.

As the United States Supreme Court has explained, there is a "distinction between lack of jurisdiction and excess of jurisdiction." Stump, 435 U.S. at 357 n.7. "[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability from his action" however, "on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." Id. (citing Bradley v. Fisher, 13 Wall. 335, 351, 20 L.Ed. 646 (1872)). While Plaintiff may believe that the Judicial Defendants here misused, abused, or over extended their judicial powers, an action taken by a judicial officer in his or her judicial capacity "does not become less judicial by virtue of an allegation of malice or corruption of motive." Grazzini-Rucki, 2014 WL 2462855, *17 (quoting Forrester v. White, 484 U.S. 219, 227 (1998)). Judicial immunity applies "even when the judge is accused of acting maliciously and corruptly" or in bad faith. Pierson v. Ray, 386 U.S. 547, 554 (1967).

"[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge" and "[a] judge will not be deprived of immunity because the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority." Stump, 435 U.S. at 356. Rather, a judge performing a judicial action "will be subject to liability only when he [or she] has acted in the 'clear absence of all jurisdiction." Id. at 356–57.

In the present case, the Judicial Defendants are either all judges in courts of general jurisdiction or referees acting in a judicial capacity at the clear direction of judges in courts of

general jurisdiction. There is no indication in the record now before the Court that the Judicial Defendants took any action with a clear absence of all jurisdiction.

It is clear that Plaintiff disagrees with the holdings of the various orders issued by the Judicial Defendants, as well as, the reasoning and interpretation contained therein. Disagreement with the actions taken by a judge, "however, does not justify depriving that judge of his immunity." Stump, 435 U.S. at 363. "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [him or her], shall be free to act upon [his or her] own convictions, without apprehension of personal consequences to'" him or herself. Mireles v. Waco, 502 U.S. 9, 10 (1991) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)). A judge's "errors may be corrected on appeal, but he [or she] should not have to fear that unsatisfied litigants may hound him [or her] with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation." Pierson v. Ray, 386 U.S. 547, 554 (1967).

Even reading the Amended Complaint as a whole, construing it liberally, taking all facts pled within as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to make any sufficient factual allegations that even remotely supports a plausible claim to avoid judicial immunity and bring suit against the Judicial Defendants.

The undersigned further notes that even if the Judicial Defendants were not entitled to absolute immunity from suit, the undersigned would still recommend that the Judicial Defendants' Motion to Dismiss be granted as all of Plaintiff claims against the Judicial Defendants are preclude by the Rooker-Feldman doctrine.

"The 'basic theory' of the Rooker-Feldman doctrine is 'that only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009) (citations omitted). Courts apply the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violated the loser's federal rights." Johnston v. DeGrandy, 512 U.S. 997, 1005–1006 (1994) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). The Eighth Circuit Court of Appeals has noted that the Rooker-Feldman doctrine "extends not only to 'straightforward appeals [of state court decisions] but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions.'" Ballinger v. Culotta, 322 F.3d 546, 547–48 (8th Cir. 2003) (quoting Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)).

The doctrine deprives lower federal courts of jurisdiction over claims that are "inextricable intertwined" with claims adjudicated in state court. Feldman, 460 U.S. at 482 n. 16. "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000) (citing Pennzoil Co. v. Texaco,

12

Inc., 481 U.S. 1, 25 (1987)); see, Canal Capital Corp. v. Valley Pride Pack, Inc., 169 F.3d 508, 512 (8th Cir. 1999).

In the present case, Plaintiff's claims against the Judicial Defendants fall squarely within and are therefore barred by the Rooker-Feldman doctrine because his claims against the Judicial Defendants are "inextricable intertwined" with his expungement claims previously adjudicated in state court.

Plaintiff seeks monetary damages from the Judicial Defendants because he believes the Judicial Defendants' handling of his prior Petition for expungement violated his constitutional rights. Those purported Federal claims, however, can only succeed if this Court were to find that the state court wrongly decided, and handled, the issue before it.

Plaintiff's claims seeking injunctive or mandamus relief from this Court by requiring the Judicial Defendants to differently decide Plaintiff's prior Petition for expungement or to force the Judicial Defendants to handle the Petition for expungement in a different manner would likewise necessarily require this Court to decide that the state court wrongly decided an issue before it. This Court cannot grant Plaintiff's requested relief without first concluding that the state court wrongly decided the issue before it and invalidating the state court orders.

Accordingly, Plaintiff's claims against the Judicial Defendants are "inextricable intertwined" with his claims adjudicated in state court, and his claims are therefore barred by the Rooker-Feldman doctrine. See, Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000).

Therefore, whether on the basis of absolute judicial immunity or application of the Rooker-Feldman doctrine, the undersigned recommends that the Judicial Defendants' Motion to Dismiss, [Docket No. 44], be **GRANTED**.

### III. Conclusion

Based on the foregoing reasons, all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. The Judicial Defendants' Motion to Dismiss, [Docket No. 44], be **GRANTED**;

2. The City of New Hope's Motion to Dismiss, [Docket No. 50], be **DENIED as moot**; and

3. The present action be **DISMISSED WITH PREJUDICE**.

Dated: February 15, 2019

s/Leo I. Brisbois  
Leo I. Brisbois  
U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).